UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT J. NICOLA and HELEN M.
NICOLA,

       Plaintiffs,                                Case No.  1:12-CV-711

v.                                                        HON. GORDON J. QUIST

HANGER PROSTHETICS & ORTHOTICS
EAST, INC.,

       Defendant.
_____/

## OPINION REGARDING DEFENDANT'S MOTION TO DISMISS

Plaintiffs, Robert J. Nicola and Helen M. Nicola, filed their complaint in this case against Defendant, Hanger Prosthetics & Orthotics East, Inc. (Hanger), on May 7, 2012, in the Kalamazoo County Circuit Court. The Nicolas' complaint alleged one count of breach of contract based on a 1991 lease of real property between the Nicolas and Hanger. Hanger removed the case to this Court on July 9, 2012, alleging diversity of citizenship, pursuant to 28 U.S.C. § 1332, as the basis for this Court's removal jurisdiction.

Hanger has now moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Nicolas' complaint for failure to state a claim. For the following reasons, the Court will deny the motion in its entirety.[1]

### I. MOTION STANDARD

Pursuant to Rule 8(a), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required, but "a

---

[1] Although Hanger requests oral argument, the Court concludes that the parties' briefs adequately address the issues Hanger raises in its motion and that oral argument is unnecessary.

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)). The court must accept all of the plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

Generally speaking, when considering a motion under Rule 12(b)(6), a court's review is limited to the allegations in the complaint. *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011). The court may also consider "matters of public record, orders, items appearing in the record of the case, *and exhibits attached to the complaint*" in ruling on a motion to dismiss. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (internal quotation marks omitted) (emphasis in original). If matters outside the pleadings are presented, the court must either exclude them or convert the motion to a summary judgment motion under Rule 56 and afford the parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P.

2

12(d); *see Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006).

The complaint in this case includes several exhibits that are pertinent to the lease agreement, including the lease itself and several addendums or amendments. Because these documents are central to the Nicolas' claims, the Court will consider them in deciding the instant motion to dismiss. Although the Nicolas have submitted certain documents, such as emails and a disc containing pictures of the premises, to support their response to the motion, the Court will not consider these items because they are not the type of materials that a court may consider when deciding a Rule 12(b)(6) motion. Likewise, the Court will not convert Hanger's motion to dismiss to a motion for summary judgment.

## II. FACTS

The following facts are taken from the complaint and attached exhibits.

In August 1991, the Nicolas and Hanger executed a Lease Agreement (Lease), pursuant to which the Nicolas agreed to lease to Hanger property known as 2314 Gull Road, Kalamazoo, Michigan.[2] The Lease had a ten-year term and granted Hanger the option to extend the Lease for two five-year terms. (Lease Agreement ¶¶ 2, 3, Compl. Ex. 1.) The Lease did not contain a provision allowing Hanger to terminate the Lease prior to the expiration of the ten-year Lease term.[3]

On August 21, 2001, the Nicolas and Hanger executed a single-page Addendum to Lease (2001 Addendum), which, among other things, extended the Lease term for a period of five years, adjusted the rent, and added the following provision: "Tenant shall have the option to terminate this lease after the first thirty-six (36) months with ninety (90) days written notice to Landlord." (2001

---

[2] Hanger's predecessor, J.E. Hanger, Inc., was the initial tenant under the Lease. Hanger became the tenant in 2001, when the parties executed an Addendum to Lease that, among other things, extended the Lease term.

[3] Although the Lease referenced an early termination provision, (Lease ¶ 2 (stating that the term would end ten years after completion of the landlord's work "unless sooner terminated as hereinafter provided")), it omitted such a provision.

Addendum, Compl. Ex. 1.) The 2001 Addendum further provided: "EXCEPT as herein modified, all terms and conditions of said [Lease] agreement shall continue in full force and effect. In the event of a conflict between this Addendum and the Original Lease Agreement as referenced above, the terms of this Addendum shall prevail." (*Id.*)

On May 3, 2006, William S. Wrightson, Jr., Hanger's Director of Real Estate, sent a letter to the Nicolas, stating that Hanger was exercising its option under paragraph 3 of the Lease to renew the Lease for an additional five-year period. (Letter of 5/3/06 from Wrightson, Jr. to Nicola, Compl. Ex. 1.) The letter specified the formula for calculating the "Base Rent" for the renewal term and provided that "[a]ll other terms and provisions of the Lease shall remain in full force and effect." (*Id.*) The Nicolas accepted the renewal term by signing the letter.

On April 19, 2011, the parties executed a Second Amendment to the Lease Agreement (Second Amendment), which recited that the parties "entered into a Lease Agreement dated August 12, 1991, as amended by that certain Addendum to lease dated August 21, 2001 (collectively the "Lease") . . . ." (Second Amendment at 1, Compl. Ex. 1.) The Second Amendment extended the Lease term for an additional five years, adjusted the rent for the extended Lease term, granted Hanger an option to renew, and specified certain improvements the Nicolas were obligated to complete. Finally, it provided: "EXCEPT as modified in this Amendment, all terms and conditions of the Lease, as amended, will continue in full force and effect. In the event of a conflict between the Lease and this Amendment, the terms of this Amendment will prevail." (*Id.* at 2.) Despite of the five-year term under the Second Amendment, on September 12, 2011, Hanger's counsel notified the Nicolas by letter that pursuant to the termination provision in the 2001 Addendum, Hanger was terminating the Lease as of January 31, 2012. (Letter of 9/12/11 from Ellis to Nicola, Def.'s Br. Supp. Ex. A.) Hanger paid the Nicolas rent through January 31, 2012, and moved out of the premises.

4

### III. DISCUSSION

**A.      Early Termination Claim**

Hanger contends that the Court may decide the Nicolas' early termination claim as a matter of law by applying well-known rules of contract interpretation. Hanger argues that the termination provision set forth in the 2001 Addendum was expressly incorporated into the Lease, and the subsequent agreements—including the Second Amendment—explicitly recognize the continuing validity of the termination provision. Hanger further contends that it properly exercised its right to terminate the Lease by giving the Nicolas written notice at least 90 days prior to the termination. The Nicolas respond that the Second Amendment does not contain a termination provision and does not mention the 2001 Addendum; instead, they argue, it refers only to the Lease. The Nicolas further contend that even if the termination provision applies, it conflicts with the Second Amendment and the Second Amendment controls in the event of a conflict with the Lease. Finally, the Nicolas argue that the various documents show that an ambiguity exists and, because Hanger drafted the documents, the ambiguity must be construed against Hanger.

"A lease is a contract as well as a conveyance, and ordinary rules of contract interpretation apply." *Sprik v. Univ. of Mich. Bd. of Regents*, 43 Mich. App. 178, 193, 204 N.W.2d 62, 69 (1972) (footnotes omitted). Contracts should be construed to give effect to the intentions of the parties and to give a reasonable meaning to all provisions. *Klever v. Klever*, 333 Mich. 179, 186, 52 N.W.2d 653, 656–57 (1952). If the language of the contract is clear and unambiguous, the court should construe it according to its plain sense and meaning. *Grosse Point Park v. Mich. Mun. Liab. & Prop. Pool*, 473 Mich. 188, 198, 702 N.W.2d 106, 113 (2005). A contract is ambiguous if its provisions are capable of conflicting interpretations. *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 467, 663 N.W.2d 447, 453 (2003). Ambiguity exists only if there are two or more

5

reasonable interpretations or if the provisions cannot be reconciled with each other. *Meagher v. Wayne State Univ.*, 222 Mich. App. 700, 722, 565 N.W.2d 401, 415 (1997). A court may not rewrite a contract under the guise of interpretation if the terms are clear and unambiguous. *Harbor Park Mkt., Inc. v. Gronda*, 277 Mich. App. 126, 130–31, 743 N.W.2d 585, 588 (2007).

The pertinent documents described above make clear that the parties intended to incorporate the termination provision set forth in the 2001 Addendum to all renewals and extensions of the Lease, beginning with the 2001 Addendum. The 2001 Addendum extended the Lease term, adjusted the rent, changed the lessee from J.E. Hanger, Inc. to Hanger Prosthetics & Orthotics East, Inc., added the termination provision, and confirmed that all other terms not modified by the 2001 Addendum continued in effect. Similarly, the May 3, 2006, renewal letter renewed the Lease for five years, adjusted the rent, and provided that "[a]ll other terms and conditions of the Lease,"—which, by virtue of the 2001 Addendum, included the termination provision—"shall remain in full force and effect." Finally, the Second Amendment extended the Lease term for an additional five-year period, adjusted the rent, granted Hanger an option to renew the Lease for two additional periods, and identified certain improvements that the Nicolas were obligated to complete. Moreover, the Second Amendment confirmed that all unmodified "terms and conditions of the Lease, as amended, will continue in full force and effect."

In light of the foregoing, the Nicolas' argument that the Second Amendment neither contains a termination provision nor mentions the 2001 Addendum lacks merit. Contrary to the Nicolas' assertion, the Second Amendment specifically identifies the 2001 Addendum and defines the term "Lease" as including both the original Lease and the 2001 Addendum. No reference to the 2001 Addendum was even necessary to confirm that the parties intended that the termination provision apply to the Lease because the 2001 Addendum expressly made the termination provision a part of

the Lease and the Second Amendment referred to the Lease "as amended."  Nor is there a conflict between the Lease and the Second Amendment, as the Nicolas suggest.  Nothing in the Second Amendment even arguably suggests that the termination provision does not apply to the Lease, as amended or modified by the Second Amendment.  The absence of a termination provision in the Second Amendment is thus irrelevant.  The Court also rejects the Nicolas' argument that the termination provision conflicts with the five-year extension; an early termination provision always creates the possibility that the lease will not run its full term, yet, such provisions are common in leases.  This was certainly what the parties contemplated under the 2001 Addendum.[4]

The Nicolas also point out that the Lease did not contain an integration clause, as was the case in *General Pattern v. Reit Management & Research LLC*, No. 06-CV-12677, 2007 WL 405696 (E.D. Mich. Feb. 1, 2007).  However, it is unclear how the presence or absence of an integration clause has any bearing on whether the termination provision applies to the Second Amendment.  An integration clause generally precludes a party from offering extrinsic evidence to show that an agreement was incomplete, *see Hamade v. Sunoco Inc. (R & M)*, 271 Mich. App. 145, 169–70, 721 N.W.2d 233, 249 (2006), and nullifies all antecedent agreements between the parties.  *See Archambo v. Lawyers Title Ins. Corp.*, 466 Mich. 402, 413–14, 646 N.W.2d 170, 177 (2002).  In the instant case, Hanger is not attempting to show that the Lease was incomplete or that the parties had an antecedent agreement that was not incorporated into the Lease.  Rather, it relies solely on agreements that the parties executed long after they signed the Lease.  An integration clause would not preclude Hanger's reliance on those agreements.

---

[4] As previously noted, the Court declines to consider the emails the Nicolas have submitted because they are not of the type of material the Court may consider in deciding a Rule 12(b)(6) motion. Moreover, the emails were written after the parties entered into the Second Amendment, and therefore are not germane to the parties' intent regarding the Second Amendment. In any event, because the terms of the Second Amendment are unambiguous with regard to the parties' intent to incorporate the termination provision into the Lease, the Court has no need to consider the Nicolas' evidence.

Notwithstanding the Court's conclusion that the termination provision applies to the Second Amendment, Hanger's opening brief overlooks one glaring issue: when does "the first thirty-six (36) months," after which Hanger has the right to terminate upon ninety days notice, commence? The question, then, is "the first thirty-six (36) months" of what term? The Nicolas do not raise this issue in their response, but Hanger states in its reply that "[t]he 2001 Addendum . . . gave Hanger the option to terminate the lease early after the first 36 months (i.e., after July 31, 2004), with a ninety-day notice." (Def.'s Reply Br. at 1.) Yet, Hanger took a completely different position in its September 12, 2011, termination letter, when it claimed "the right to terminate the Lease for any reason after the first thirty-six (36) months of the *Original Lease* . . . ." In the Court's view, Hanger's initial interpretation is unreasonable because the initial ten-year Lease term had expired by the time the parties entered into the 2001 Addendum, so it would have made no sense for the parties to agree to a thirty-six month "no termination" period that had already expired. The more logical interpretation, as Hanger suggests, is that the thirty-six month period commenced with the five-year extended Lease term set forth in the 2001 Addendum. But the Lease term was twice renewed and/or extended thereafter for additional five-year periods. A (if not the only) reasonable conclusion is that each successive five-year renewal or extension included a thirty-six month period during which Hanger could not terminate, giving the Nicolas some protection in exchange for granting Hanger the right of early termination.[5] If each five-year renewal/extension term was

---

[5] Although the Court has found no Michigan case law on the issue, it notes that many jurisdictions distinguish between extensions and renewals of leases. *See Med-Care Assocs., Inc. v. Noot*, 329 N.W.2d 549, 551 (Minn. 1983) ("The legal distinction between an extension and a renewal of a lease is that an extension merely continues the original lease, while a renewal requires a new lease."); *Tinaco Plaza, LLC v. Freebob's, Inc.*, 74 Conn. App. 760, A.2d 403 (Conn. App. Ct. 2003) (noting that a stipulation for renewal of a lease requires a new lease or a formal extension of the existing lease, while a covenant to extend a lease merely continues the tenancy for the renewal period without the necessity of any action by the lessee apart from performance of the lease conditions); *McClellan v. Britain*, 826 P.2d 245, 249 (Wyo. 1992) (noting that "[courts have generally held that while an extension continues the original lease, a renewal requires a new lease"); *Labor Hall Ass'n, Inc. v. Danielsen*, 24 Wash. 2d 75, 85, 163 P.2d 167, 172 (Wash. 1945) ("It is the generally accepted rule that a covenant for the extension of the term of a lease, at the option of the lesee, operates, upon the exercise of privilege, *as a present demise for the full term to which it may be extended*, and not as a demise

subject to a thirty-six month "no termination" period—as was the case with the five-year extension set forth in the 2001 Addendum—then the Nicolas have stated a claim against Hanger for improper early termination because Hanger terminated the Lease approximately thirty months before it had the right to do so. Therefore, Hanger is not entitled to dismissal of this claim.

**B.     Disrepair Claim**

In paragraph 11 of their complaint, the Nicolas allege that Hanger breached the Lease by "fail[ing] to keep and put the premises back into a good state of repair." Hanger argues that this single allegation is insufficient to give Hanger adequate notice under *Twombly* because it omits any mention of the specific defects in the premises, who caused them, and whether they were more than ordinary wear and tear. Hanger asserts that the Nicolas' scant allegation leaves it guessing as to why it allegedly left the premises in a state of disrepair. The Nicolas respond that their allegation suffices to give Hanger fair notice of their claim. In addition, citing pleading examples from the Appendix of Forms to the Federal Rules of Civil Procedure, the Nicolas contend that in cases involving simple claims a plaintiff may meet the *Twombly* pleading standard with broad allegations.[6]

Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, a complaint need only include a "short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled to relief," and a demand for the relief sought. To

---

merely for the shorter period with the privilege of a new lease for the extended term." (internal quotations omitted) (italics in original)). On the other hand, some courts have held that there is no legal difference between an extension and a renewal of a lease. *See Sisco v. Rotenberg*, 104 So.2d 365, 370 (Fla. 1958) (stating that "the distinction between [extension and renewal] when used in leases is too refined and theoretical to be real, as a matter of law, in practical affairs"). In the instant case, the Lease and the Second Amendment use the terms renew and extend interchangeably, suggesting that the parties, or at least the drafter, assigned no particular legal significance to the two terms.

[6] Hanger castigates the Nicolas for their "ignorance of the controlling pleading standards" in relying on the Appendix of Forms, which Hanger argues is obsolete in light of *Twombly*. (Def.'s Reply Br. at 8 n.3.) The Sixth Circuit disagrees. In *In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323 (6th Cir. 2012), the court held that "to the extent . . . that *Twombly* and its progeny conflict with the Forms and create differing pleading requirements, the Forms control." *Id.* at 1334. *In re Bill of Lading* was decided on June 7, 2012—almost three months before Hanger filed its reply brief.

state a claim for breach of contract, a "plaintiff must allege a contract, a breach of that contract, and damages." *Knight v. Rhoades Aviation, Inc.*, No. 255952, 2006 WL 66633, at *4 (Mich. Ct. App. Jan. 12, 2006) (per curiam) (citing Mich. Civ. Jury Instruction 142.01).

The Court concludes that the Nicolas' allegations are sufficient to allege a breach of contract claim based on Hanger's failure to keep the premises in a good state of repair. The complaint identifies the Lease as the contract, alleges the breach by Hanger, and requests damages for, among other things, the cost of maintenance and repair of the premises. (Compl. ¶¶ 7, 11, 14.) "To survive a motion to dismiss a plaintiff need not describe all the details of the alleged breach, but must plead sufficient facts to show that he is entitled to relief." *Robins v. Global Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 643 (N.D. Ohio 2012) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)); *see also DeliverMed Holdings, LLC v. Schaltenbrand*, Nos. 10-cv-684-JPG-DGW, 10-cv-685-JPG-DGW, 2011 WL 2124343, at *8 (S.D. Ill. May 27, 2011) ("Despite its lack of specifics about the terms of the alleged promises made by the Medicate Parties, Count IV adequately pleads a breach of contract claim . . . . The complaint describes each theory with enough detail to alert the Medicate Parties to what the claims are and the grounds on which they rest. . . . That there is no factual allegation to support the specific amount Swift requests is of no matter."); *Siever v. BWGaskets, Inc.*, No. 6:08-cv-1388-Orl-19GJK, 2009 WL 528624, at *4 (M.D. Fla. Mar. 2, 2009) (noting that under *Twombly* "a plaintiff is not required to map out in detail how the defendant has breached a contract"). Hanger may flesh out the details of the Nicolas' breach of contract claim through discovery. *See Camacho v. Advocate Health Care*, No. 11 C 5795, 2011 WL 5903471, at *3 (N.D. Ill. Nov. 22, 2011) ("The specifics of the alleged contractual terms and whether the defendant breached a duty imposed by the contract will be ascertained during discovery and at the dispositive motion or trial stage.").[7]

---

[7] Hanger also notes that the Nicolas fail to even cite the

## IV. Conclusion

For the foregoing reasons, the Court will deny Hanger's motion to dismiss.

An Order consistent with this Opinion will be entered.


Dated: October 29, 2012                 /s/ Gordon J. Quist
                                                        GORDON J. QUIST
                                           UNITED STATES DISTRICT JUDGE